UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

Jesus Enrique Batista-Sanechez,

Debtor

Bankruptcy No. 12-48247

Chapter 11

### MEMORANDUM OPINION ON SUNTRUST'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED PLAN OF REORGANIZATION DATED OCTOBER 31, 2013

The Debtor obtained a chapter 7 bankruptcy discharge in an earlier case. He filed for bankruptcy relief under chapter 11 on December 7, 2012. After three earlier plans were withdrawn, Debtor filed an Amended Plan of Reorganization Dated October 31, 2013 (the "Plan"). SunTrust Bank ("SunTrust") has objected to the plan. SunTrust also moved for relief from the automatic stay as to two properties in Windermere, Florida, in which SunTrust asserts secured claims: Proof of Claim No. 8, concerning a property located at 9917 Lanai View Court, and Proof of Claim No. 9, concerning a property located at 6458 Lake Burden View Drive (the "6458 Property"). Debtor objected to both of SunTrust's proofs of claim. Those objections were earlier ruled on: No. 8 at 502 B.R. 227, and No. 9 at 501 B.R. 850. The opinion in Proof of Claim No. 9 was revised in light of a subsequent Seventh Circuit opinion, *Brookfield Commons. In re B.R. Brookfield Commons No. 1 LLC*, 735 F.3d 596, 598-99. SunTrust's motions for relief from the automatic stay are separately pending, as Debtor attempts to demonstrate that he can offer a confirmable plan.

SunTrust argues that Debtor's Plan is not confirmable because, under *Brookfield Commons* and § 1111(b)(1) of the Bankruptcy Code, SunTrust is entitled to a $1.2 million unsecured deficiency claim based on its Proof of Claim No. 9 (regarding the 6458 Property), which would entitle it to vote to block plan confirmation. SunTrust also argues that to the extent Debtor proposes to cram down the class of unsecured creditors, it may not do so because the Plan violates the absolute priority rule of § 1129(b)(2)(B)(ii), and to the extent that there exists a new value exception to the absolute priority rule, the opinion in *Castleton* requires competitive bidding wherein an undersecured creditor may credit bid its claim. *In re Castleton Plaza, LP*, 707 F.3d 821 (2013). Further, SunTrust requests leave to withdraw its § 1111(b)(2) election, and objects to the asserted misclassification of several other claims.

For the following reasons, certain SunTrust objections to Plan confirmation are sustained, and the Plan will be disallowed and dismissed by separate order with leave to file another amended plan in accord with *Castleton* and *Brookfield Commons*.

## Discussion

### Jurisdiction

The issue at hand is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. It concerns an objection to a plan of reorganization, and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(L). An objection to a plan of reorganization "stems from the bankruptcy itself," *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011), and may constitutionally be decided by a bankruptcy judge.

### Brookfield Commons

Bankruptcy Code Section 1111(b)(1)(A) provides "A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—."[1] § 1111(b)(1)(A). The *Brookfield Commons* opinion was unequivocal about the application of that provision, holding: "The statute does not state that the claim be secured by any value in the property of the estate, and the only prerequisite is that a claim be 'secured by a lien on property of the estate.'" *In re B.R. Brookfield Commons No. 1 LLC*, 735 F.3d 596, 598-99. This has been found to be so even though the loan would otherwise be nonrecourse as a result of a prior chapter 7 discharge, reasoning that that the term "claim" extends "to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence." *In re Stanley*, 185 B.R. 417, 426 (Bankr. D. Conn. 1995) (quoting *Johnson v. Home StateBank*, 501 U.S. 78, 86-87 (1991) (internal quotations omitted).

Debtor argued in his "Brief on the Effect of Brookfield Commons" (Docket No. 348) that *Brookfield Commons* does not hold that debts which were previously discharged pursuant to § 727 are revived and enforceable against the Debtor pursuant to §1111(b)(1)(A). First, Debtor cited *Comm'r v. Tufts*, 461 U.S. 300 (1983) for the proposition

---

[1] The two exceptions are if (i) a § 1111(b)(2) election is made "by at least two-thirds in amount and more than half in number of allowed claims of such class," or if (ii) the property is sold under § 363. § 1111(b)(1)(A)(i) & (ii). SunTrust made such an election on May 20, 2013. (Docket 108.) Now, SunTrust has requested withdrawal of that election. At the January 21, 2014 hearing, counsel for SunTrust and Debtor indicated that the election would be withdrawn by agreement.

2

that discharged debt and non-recourse debt have different characteristics. But *Tufts,* a tax case opinion, did not address the effect of a personal discharge on a secured debt.

Debtor did not explain why an opinion regarding effect of non-recourse status on the cost basis in property in the tax context, as in *Tufts*, sheds any light on the bankruptcy context. If anything, *Tufts* cuts against the Debtor's argument. The *Tufts* opinion held that the difference between recourse and non-recourse loans

> does not alter the nature of the obligation; its only effect is to shift from the borrower to the lender any potential loss caused by devaluation of the property. If the fair market value of the property falls below the amount of the outstanding obligation, the mortgagee's ability to protect its interests is impaired, for the mortgagor is free to abandon the property to the mortgagee and be relieved of his obligation.

*Id.* at 312 (1983) (footnote omitted).

Debtor's other case, cited as authority, *In re Killian*, 422 B.R. 903 (Bankr. N.D. Ill. 2009), did not discuss the effect of the non-recourse status of a loan at all. Indeed, Debtor has argued, without citing any applicable authority, that § 1111(b)(1)(A) should not be read to revive a claim that has already been discharged by an earlier bankruptcy proceeding, despite its language earlier quoted.

Debtor also argued that the reasoning in *Brookfield* should not be read to resurrect debts that were previously discharged in a chapter 7 proceeding, citing the language of § 727(b), which provides that, "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." However, the effect of § 1111(b)(1)(A) is not to "resurrect" a prior debt. Rather, as the *Brookfield* Opinion explained, adoption of § 1111(b)(1)(A) addressed the harsh result of the opinion in *Pine Gate Associates*, where the debtor was able to cash out a non-recourse, undersecured lender while real estate prices were depressed. 735 F.3d at 599 (citing *Great Nat'l Life Ins. Co. V. Pine Gate Associates, Ltd.,* 2 Bankr. Ct. Dec. 1478 (Bankr. N.D. Ga 1976)). "Thus, the former Code left the creditor with neither full payment of the loan nor the right to foreclose on the property, resulting in a windfall to the debtor." *Brookfield.* at 600.

Debtor in this case seeks precisely that windfall, as he admitted in his own filings. He noted in his Response to Keene's Pointe's Motion to Lift the Automatic Stay that, "In order to reorganize his real estate development business, the Debtor designed a four step-process, starting with bankruptcy relief as to non-core debt," which he accomplished in his

3

prior personal chapter 7, ending with "reorganization of the debt secured by the real properties to be retained," which Debtor seeks to accomplish in this chapter 11 case. (Docket 337 at 3-4). As Debtor narrated in his pending Disclosure Statement, "Commencing in the summer of 2007, the economic downturn hit the Central Florida real estate market particularly hard. . . . [the] portfolio properties were severely devalued and for all practical purposes are not saleable." (Docket 270 at 16.) Due to the bankruptcy discharge as a result of Debtor's prior chapter 7 filing, SunTrust no longer has recourse against him personally. Absent filing of the current case, SunTrust would have been able to foreclose on the property and keep any future appreciation of the property for itself. Debtor seeks in this case to take away that right of SunTrust by stripping down SunTrust's claim to the devalued market level. This is precisely the result § 1111(b)(1)(A) was intended to prevent. Far from depriving Debtor of the benefit of his prior discharge by resurrecting a discharged debt, § 1111(b)(1)(A) prevents him for reaping a windfall at the expense of his creditors.

As a result, SunTrust Bank's claim must be treated as if it has full recourse. Debtor's Objection to SunTrust's Proof of Claim No. 9 was therefore overruled, and SunTrust has a secured claim on value of the 6458 Property, as well as an unsecured deficiency claim for debt in excess of property value, amounting to around $1.2 million.

Castleton

Bankruptcy Code § 1122(a) requires a claim to be placed in classes with similar claims. Debtor's current Plan does not classify SunTrust's unsecured deficiency claim because that claim was purportedly not secured by property of the estate, and not timely filed.[2] Debtor's Plan provides for unsecured claims (other than the student loan debt owed to ACS) in Class 8, and estimates that there will be approximately $78,565 worth of those claims. SunTrust maintains that Debtor cannot possibly pay its unsecured deficiency in full (since nothing in the Plan or Disclosure Statement suggests Debtor can come up with $1.2 million in addition to what the plan already provides). SunTrust will vote against the Plan, so it will be impossible for two-thirds of the class in amount to vote in favor, which means that Class 8 will not accept the plan. See § 1126(c).

---

[2] Debtor also objects based on the improper classification of several other claims under (1) § 1123(a)(1) and (2) unfair discrimination against § 1129(b)(1). Debtor responds that SunTrust should not be allowed to raise objection on behalf of parties who do not object. In any case, it is not now necessary to rule on those issues which are reserved.

4

Since Class 8 will not accept the plan, Debtor must cram down the plan under § 1129(b)(2). Class 8 is unsecured, and Debtor will not be able to pay SunTrust's unsecured deficiency as of the effective date of the plan as required under § 1129(b)(2)(B)(i). Thus, Debtor is subject to the absolute priority rule of § 1129(b)(2)(B)(ii). Debtor argues that there is an exception to the absolute priority rule for individual debtors in Chapter 11 as a result of the 2005 bankruptcy reform. *See E.g. In re Shat*, 424 B.R. 854, 868 (Bankr. D. Nev. 2010). However, so far, the three circuit courts of appeal to have considered the question have rejected this view. *In re Lively*, 717 F.3d 406, 407 (5th Cir. 2013); *In re Stephens*, 704 F.3d 1279 (10th Cir. 2013); *In re Maharaj*, 681 F.3d 558 (4th Cir. 2012). In light of that authority, Debtor's argument is also rejected here.

Debtor further argues that his Plan can be confirmed under the new value exception to the absolute priority rule. In *Bank of America National Trust & Savings Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999), the Supreme Court declined to address whether the new value exception exists, but held that if the new value exception did exist, it is not satisfied when the debtor did not extend "an opportunity to anyone else either to compete for that equity or to propose a competing reorganization plan." *Id.* at. 454. The Seventh Circuit, in an opinion by Judge Easterbrook, characterized the holding of *203 North LaSalle* as, "that competition is the way to tell whether a new investment makes the senior creditors (and the estate as a whole) better off." *In re Castleton Plaza, LP*, 707 F.3d 821 (2013). The opinion also concluded that the competition should come in the form of bidding, with the right of creditors to bid the value of their loans. *Id.* (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065 (2012). Finally, the *Brookfield Commons* opinion held that "plans giving insiders preferential access to investment opportunities in the reorganized debtor should be subject to the same opportunity for competition as plans in which existing claim-holders put up the new money." *Id.* at 823.

Debtor argues that *Castleton* does not apply because *Castleton* and *RadLAX* were single asset real estate cases, and thus only mean that, "where the single asset of the estate is controlled by the single creditor of the estate, the creditor is allowed to credit bid at the sale in much the same way as a creditor is allowed to credit bid at a § 363 sale." (Debtor's Sur-Reply, Docket 347 at 7.) But the *Castleton* opinion contains no language that suggests it should be confined to single-asset-real-estate cases. Instead, the reasoning was quite broad, presenting the question as "whether an equity investor can evade the competitive process by arranging for the new value to be contributed by (and the new equity go to) an 'insider.'"

5

707 F.3d at 821. Legal discussion in *Castleton* began with the broad proposition that, "Unpaid creditors normally receive the equity in a reorganized business." *Id.* at 822. The opinion concluded with the observation that, "[c]ompetition helps prevent the funneling of value from lenders to insiders, no matter who proposes the plan or when." *Id.* at 824.

Debtor also argues that *Castleton* requires bidding on the equity – not bidding on specific assets – of the reorganized debtor. An individual's interest in a business run as a sole proprietorship is an "equity interest." *See Unruh v. Rushville State Bank of Rushville, Mo.*, 987 F.2d 1506, 1508 (10th Cir. 1993) ("Because Appellants have a right to the future profits of their farms regardless of insolvency at the time of the petition, we think that Appellants clearly have interests in their estates in the form of equitable ownership interests."). Under Debtor's proposed approach – if bidding must be on the equity and not on specific assets – SunTrust would be allowed to bid its unsecured deficiency claim on the entire development business because Debtor would have a right to any future earnings of his development business, and so interest in it should be considered in the form of equitable ownership interests. However, decision as to the proper form of bidding is reserved for issues to be raised after filing of any new plan.

Debtor has requested that if the absolute priority rule does apply, he be granted leave to amend his Plan in order to incorporate an auction mechanism, where he would also submit and document a funding pledges of $450,000 in support of the plan. (Debtor's Amended Response to SunTrust's Objection to Confirmation, Docket 304 at 14; Debtor's Sur-Reply, Docket 347 at 5.) In light of the fact that *Brookfield Commons* was decided after Debtor's current Plan was filed, Debtor will be granted leave to so amend.

### § 1129(a)(15)

While SunTrust does not raise an objection under § 1129(a)(15), it should be noted that Debtor's Plan may not be confirmed because it fails to comply with the requirement that an individual Chapter 11 debtor must pay future earnings into the plan. "[R]egardless of whether an objection to confirmation has been raised, the court must determine whether the requirements of § 1129(a), and if applicable § 1129(b), have been met." *In re Draiman*, 450 B.R. 777, 789 (Bankr. N.D. Ill. 2011).

Section 1129(a)(15) provides:

In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan –

6

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due on the plan, or during the period for which the plan provides payments, whichever is longer.

§ 1129(a)(15). SunTrust has an allowed unsecured claim under *Brookfield Commons*, and has objected to the Plan. It has rights in property: both its secured market value and a $1.2 million deficiency claim. Debtor's plan must recognize those rights, or else Debtor must pay into the Plan his entire projected disposable income for at least five years. The Plan does not propose to do either, so the Plan is unconfirmable.

## Conclusion

Under *Brookfield Commons*, SunTrust is entitled to an unsecured deficiency claim of around $1.2 million. Under *Castleton*, Debtor may not retain an interest in the reorganized debtor without satisfying the absolute priority rule or at least providing for a credit bid from undersecured creditors. Section 1129(a)(15) must also be complied with. Therefore, SunTrust's Objection to Confirmation of Plan is sustained, and the Plan will be disallowed and dismissed by separate order. Debtor will be granted leave to file a fourth amended plan. With Debtor's agreement, SunTrust may withdraw its § 1111(b)(2) election.

SunTrust's two motions to modify the automatic stay will be continued with stay to remain in effect until the new proposed plan is disposed of. If Debtor is unable to confirm a new plan within a reasonable time, it will of course be appropriate to consider granting SunTrust relief from stay.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 31st day of January, 2014.