United States Bankruptcy Court
Northern District of Illinois
Eastern Division

In re:

Jesus Enrique Batista-Sanchez,

Debtor.

Case No. 12 B 48247
Chapter 11
Judge: Hon. Jack B. Schmetterer

# MEMORANDUM OPINION ON DEBTOR'S MOTION FOR RULE TO SHOW CASE [DKT. NO. 466]

Debtor Jesus Enrique Batista-Sanchez ("Debtor") now moves this Court to issue an order directing creditor SunTrust Bank ("SunTrust") to show cause as to why it should not be held in contempt of this Court's prior order confirming the Debtor's Chapter 11 Plan.

For the reasons discussed below, Debtor's Motion for Rule to Show Cause will be granted in part and denied in part by separate order to be entered concurrently herewith.

## UNDISPUTED FACTS

1. Debtor is an individual who has been engaged in real estate investment, development and management since 1998. He is also an attorney licensed in Illinois, and the owner of a Law Office, Batista Law Group, PSC, which is located in San Juan, Puerto Rico. [Dkt. No. 466.]

2. Between 2004 and 2008, Debtor developed high-end, luxury homes in central Florida through a company known as Kasa Development. [Dkt. No. 466.]

3. Due to the economic downturn beginning in 2007, Debtor's inventory of real estate was severely devalued. Debtor was lacked the necessary cash-flow to service the secured debt on the real estate assets and found himself in default in 2008. [Dkt. No. 466.]

4. One such real estate asset held by Debtor is known as 9974 Oak Quarry Dr., Orlando, FL (the "Property"). [Dkt. Nos. 466 & 470.]

5. SunTrust holds two mortgages on the Property: a first mortgage that was stripped down from $623,920 to $242,500 by the Chapter 11 Plan and a second mortgage of $130,000 that is the subject of the instant Motion. [Dkt. Nos. 466 & 470.]

6. Debtor filed his petition for Chapter 11 bankruptcy relief on December 7, 2012. [Dkt. Nos. 1 & 466.]

7. This Court entered an order confirming Debtor's Chapter 11 Plan on May 8, 2014. [Dkt. Nos. 417-1, 443 & 466.]

8. Debtor filed the instant Motion for Rule to Show Cause several years later on May 23, 2019. [Dkt. No. 466.] Debtor states in his Motion that he holds the Property in joint tenancy with his father, mother, and wife. As such, Debtor asserts that his interest is not a in a quarter of the Property, but in the Property as a whole. Therefore, Debtor argues that the Chapter 11 plan and Confirmation Order not only stripped down the value of SunTrust's first mortgage, it also rendered SunTrust's second mortgage wholly unsecured as to the entirety of the Property. Debtor points to the language of the plan vesting all property of the estate in the reorganized Debtor free and clear of all liens. If SunTrust required some other treatment of the Property, the time to object would have been at confirmation. Finally, Debtor acknowledges that by this Motion, he is *not* seeking a third party release of his father who was the only party liable under the Note.

9. SunTrust filed its Response on June 20, 2019. [Dkt. No. 470.] SunTrust argues that only one quarter interest in the Property was treated under the Chapter 11 Plan because that is all Debtor owned at the time. SunTrust cites *In re Batista-Sanchez*, 493 B.R. 521 (Bankr. N.D. Ill. 2013) an opinion which was issued in this very same case but dealt with different property, and argues that its holding (it was found that marital property of the Debtor and his wife could be administered in the Chapter 11 Plan) is inapplicable in the instant case because the subject Property is owned in joint tenancy with four other individuals, as opposed to tenancy by the entirety with just his wife as in the previous opinion. SunTrust further argues that Debtor could have transferred the entirety of the subject Property to the Reorganized Debtor (as he did with the other property described in *In re Batista-Sanchez*, 493 B.R. 521 (Bankr. N.D. Ill. 2013)), but did not do so. Similarly, SunTrust argues that Debtor did not include in the confirmed Chapter 11 Plan a provision indicating that upon payment of the lien in full, SunTrust would be required to release its lien as he did with other property in the Chapter 11 Plan. As such, argues SunTrust, only Debtor's quarter interest in the Property would have been vested in the Reorganized Debtor free and clear of all liens. Finally, SunTrust argues that it is not in violation of the terms of the Plan and Confirmation Order because it is only refusing to release its second mortgage on the three-quarter interest in the Property not treated under Debtor's plan. Therefore, SunTrust asserts that it is not collaterally attacking the Plan post-confirmation and sanctions are inappropriate.

10. Debtor filed his Reply on June 27, 2019. [Dkt. No. 472.] Debtor argues that because the Property was held in joint tenancy, he owned an undivided interest in the *entire* Property and the entire Property was treated in the Chapter 11 Plan. Debtor points to his Schedule A/B indicating that he was a joint owner and listing the value of the Property at $250,000 – equivalent to the value of the *entire* Property, not just an alleged quarter interest. Moreover, Debtor notes that the Plan clearly categorized SunTrust's second mortgage as a wholly unsecured claim. By definition, Debtor argues, SunTrust is required to release its second mortgage because an unsecured claim *cannot* be secured by collateral. Debtor again argues that had SunTrust required different treatment of its second mortgage, it should have objected during confirmation. Debtor did not have to transfer this Property to the Reorganized Debtor through quitclaim deed because he held an undivided interest in the entire Property. Finally, Debtor argues that, taken as a whole, the provisions of the Plan and Confirmation Order were clear enough that SunTrust's refusal to release the second mortgage is a violation of the same and deserves sanctions.

## DISCUSSION

The dispute between the parties centers primarily around two issues. First, whether the Property as a whole, or just Debtor's alleged one-fourth interest therein, was part of the bankruptcy estate. Second, based on the determination of Debtor's and the estate's interest in the subject Property, what effect did Debtor's Chapter 11 plan and this Court's Confirmation Order have upon SunTrust's second mortgage? Once those issues are addressed, it can be determined whether SunTrust's actions constitute sanctionable conduct in violation of an order of this Court. Each of these issues is addressed separately below.

**A. Debtor and the Bankruptcy Estate Owned an Undivided Interest in the Entire Property Through His Joint Tenancy**

The commencement of a bankruptcy case creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Whether a debtor has a legal or equitable interest in property, however, is determined by applicable state law. *Butner v. United States,* 440 U.S. 48, 55 (1979).

"The common law characterized each joint tenant as **possessing the entire estate, rather than a fractional share**: '[J]oint-tenants have one and the same interest . . . held by one and the

same undivided possession." *U.S. v. Craft*, 535 U.S. 274, 280 (2002) (quoting 2 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 180 (1776)) (emphasis added). Florida courts have held similarly. *Sitomer v. Orlan*, 660 So. 2d 1111, 1113 (Fla. Dist. Ct. App. 1995); *see also Jensen v. Anderson (In re Anderson)*, 561 B.R. 230, 240 (Bankr. M.D. Fla. 2016) ("Unless stated otherwise, joint tenants . . . are presumed to own their jointly held property in equal undivided interests."). Several courts, including a Bankruptcy Appellate Panel in the Eighth Circuit, have held that the entire undivided interest of debtors holding property in joint tenancy becomes part of the bankruptcy estate. *Peet v. Checkett (In re Peet)*, 529 B.R. 718, 723 (B.A.P. 8th Cir. 2015) ("The Peets' undivided estate in the real property and Marilyn Peet's undivided estate in the pickup are property of the bankruptcy estate."); *Hahn-Martinez v. Slifco (In re Slifco)*, Civil Action No. 06-cv-01781-EWN, 2007 U.S. Dist. LEXIS 43391, at *21 (D. Colo. June 14, 2007) ("With few enumerated exceptions, the estate includes all legal or equitable interests of the debtor, including properties held in joint tenancy, at the commencement of the case.").

Indeed, as Debtor points out, a similar issue was ruled on in this very case. In *In re Batista-Sanchez*, 493 B.R. 521 (Bankr. N.D. Ill. 2013), it was held that Debtor's marital rights in certain property allowed Debtor to administer the entire property in his Chapter 11 Plan, even though only his wife appeared on the title. It was reasoned that the, "term 'claim' included mortgage obligations for which a debtor's personal liability had been discharged in a prior chapter 7 bankruptcy case," and that, "a claim against the debtor need not be against the debtor personally because a claim eligible for bankruptcy treatment could consist solely of a claim against the debtor's property." *Batista-Sanechez*, 493 B.R. at 526 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991)). Therefore, a claim that is purely *in rem*, and not *in personam* with recourse available against the debtor, is still a claim that can be administered in a Chapter 11 Plan. *Id.*

Based on Florida state law (see *Sitomer v. Orlan*, 660 So. 2d 1111, 1113 (Fla. Dist. Ct. App. 1995); *see also Jensen v. Anderson (In re Anderson)*, 561 B.R. 230, 240 (Bankr. M.D. Fla. 2016)), Debtor's ownership interest in the Property as a joint tenant is an undivided interest in the whole, not a one-fourth interest as SunTrust has incorrectly asserted. Debtor intended for the entirety of the Property to be administered in his Chapter 11 Plan. In his Schedule A/B [Dkt. No. 14], Debtor indicates that the Property was held in joint tenancy and included the full $250,000

value of the Property. In the liquidation analysis of the Chapter 11 Plan, Debtor also referenced the full value of the Property. [Dkt. No. 390.] SunTrust was privy to Debtor's undivided interest in the whole of the Property as soon as he filed his schedules on December 22, 2012. Debtor disclosed his undivided interest in the whole of the Property in multiple court filings and does not indicate anywhere in the record that he held only a one-quarter interest.

SunTrust's argument that the previous *Batista-Sanchez* opinion is inapplicable to the case at hand is unavailing. In that case, Debtor was not even on the title of the property there in dispute. *Id.* at 524. It was held that because the home was purchased with martial funds while Debtor and his wife were married, Debtor had a marital interest in the subject property that became part of the bankruptcy estate. *Id.* at 526.

Here, Debtor is on the title to the Property: he owns it as a joint tenant with his wife, mother, and father. Therefore, Debtor's interest in the Property is an equal, undivided interest, pursuant to both Florida and Supreme Court authority discussed above. Debtor's argument that this Property can be administered in his Chapter 11 Plan is even stronger than in the previous case as he currently holds a clearly-defined, undivided interest in the whole Property. SunTrust's contention as to Debtor's one-fourth interest is a misapprehension of the law.

Likewise, SunTrust's argument that Debtor could have included a provision transferring the entirety of the Property by quit claim deed, as he did with other property in this case, is unconvincing. Yes, Debtor did include a plan provision indicating that interests of other parties relating to a different piece of property would be transferred to him so that the property would become part of the bankruptcy estate. [Dkt. No. 390, § 8.3 ("On the Effective Date of the Plan or as soon as possible thereafter, Jesus E. Batista Montanez (Batista Sr.), Socorro Sanchez, and Maritza De Jesus will transfer, by quit claim deed or otherwise, all of their interests in the Lanai View Property to the Reorganized Debtor.").] However, such a provision was wholly unnecessary here because the Debtor owns an undivided interest in the entire subject Property. Debtor did not need to effectuate the same kind of transfer because his interest in the whole of the Property was already part of the bankruptcy estate. Again, SunTrust's argument stems from its misunderstanding of the relevant law and Debtor's interest in the Property.

Therefore, pursuant to Florida and Supreme Court authority, it is held that Debtor owns an undivided interest in the whole of the subject Property. That undivided interest in the

Property, stemming from Debtor's ownership of the property in joint tenancy, is what was administered in his confirmed Chapter 11 Plan.

### B. Debtor's Confirmed Chapter 11 Plan Extinguished SunTrust's Second Mortgage

SunTrust argues that even if the entirety of the subject Property were administered pursuant to the Debtor's Confirmed Chapter 11 Plan, the plan itself does not provide that its second mortgage must be released. SunTrust argues that three provisions of the confirmed Chapter 11 Plan, Sections 6.3.3.3, 6.3.3.7, and 6.3.9.7 each include language that states that the mortgagee retains its lien on the relevant property until such time as Debtor makes payment of the claim in full, and only then shall the mortgagee file a release of lien. [Dkt. No. 390.] However, SunTrust overlooks provision 6.3.8.1 which states that:

> "[The e]ntierty of SunTrust Bank's Claim will qualify and receive treatment under the Plan as an Allowed Class 14 **Unsecured Non-Recourse Deficiency Claim**."

[Dkt. No. 390.]

> The Chapter 11 Plan goes on to state that:
> "Should any portion of SunTrust Bank's Claim be determined to be an Allowed Class 8 Claim . . . The holder of any Allowed Class 8 Claim will retain its lien against the [Property] to the same extent and priority as it had as of the Petition Date, unless otherwise modified by the Plan."
> "Based upon the Debtor's proposed Determined Value of the [Property] and the priority of SunTrust Bank's lien, **no portion of SunTrust Bank's Claim will be a Secured Claim**."

[Dkt. No. 390, §§ 6.3.8.2 & 6.3.8.1.]

Debtor's proposed value of the Property was the $250,000 figure that SunTrust's first mortgage was stripped down to by the Plan. SunTrust does not dispute this and explicitly states that it is not attempting to collaterally attack the Plan at this stage (indeed, as Debtor has pointed out a confirmed plan of reorganization and the ensuing confirmation order constitutes both a court order and a contract that binds the creditor. *Siemens Energy & Automation, Inc. v. Good (In re Heartland Steel, Inc.)*, 389 F.3d 741, 744 (7th Cir. 2004); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)).

6

Finally, the Plan explicitly states that all of the Debtor's assets (including his whole, undivided interest in the Property) vests in the Reorganized Debtor free and clear of all liens, Claims, encumbrances and interests. [Dkt. No. 390, § 8.12.] This mirrors the language of 11 U.S.C. § 1141(c), which states in relevant part that:

> "[E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors."

As discussed in Section A of this Memorandum Opinion, the property dealt with in the confirmed Chapter 11 Plan was Debtor's undivided interest in the entire subject Property. The plain language of the Plan indicates that SunTrust's claim based on its second mortgage would be nothing more than an unsecured claim based on Debtor's valuation of the Property, which SunTrust did not object to. By its very nature, an unsecured debt is one which is "not supported by collateral or other security." *Unsecured Debt*, BLACK'S LAW DICTIONARY (11th ed. 2019). The treatment of SunTrust's second mortgage is binding upon it as a result of the Chapter 11 Plan and Confirmation Order. The time for SunTrust to have objected to its treatment under the Plan would have been before confirmation. In order to conform with the terms of the confirmed Chapter 11 Plan, SunTrust must release its second mortgage or it will continue to retain collateral on what it has been bound to accept is now a totally unsecured debt.

Based on the foregoing, an order will be entered concurrently herewith requiring SunTrust to release its second mortgage on the Property forthwith because it is a wholly unsecured debt by the terms of the confirmed Chapter 11 Plan.

## C. Hearing on Sanctions

Finally, Debtor argues that based on its refusal to release its second mortgage, SunTrust is in violation of the confirmed Chapter 11 Plan and the Order of Confirmation and its conduct warrants sanctions.

To hold a party in contempt, a court, "must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated." *Trade Well Int'l v. United Central Bank*, 778 F.3d 620, 626 (7th Cir. 2015). Debtor contends that SunTrust clearly violated the unequivocal commands stemming from the confirmed Chapter 11 Plan and Confirmation Order which, as discussed above, when taken together require SunTrust to release its second mortgage on the Property.

7

SunTrust argues that even if it must release its second mortgage, the Chapter 11 Plan and Confirmation Order taken together do not constitute an "unequivocal demand" such that sanctions are warranted. SunTrust asserts that the lack of specific detail in the Plan does not make explicitly clear that SunTrust's second mortgage lien was extinguished at any point. While the preceding discussion explains why SunTrust is wrong as to the extinguishment of its second mortgage lien, there is some validity to its argument that the issue is not unequivocally clear.

Debtor admits that sanctions are unlikely or inappropriate where the subject order is vague and unclear. He argues, however, that courts must consider the entire order and the sophistication of the parties, rather than merely accepting a party's rationalizations for why it violated an order. *In re Kimball Hill, Inc.*, 565 B.R. 878, 890 (Bankr. N.D. Ill. 2017); *PCNet, Inc. v. Advanced Corp. Networking*, CV 910120403, 1997 Conn. Super. LEXIS 2198, at *7 (Super. Ct. Aug. 13, 1997).

Debtor relies heavily on the two above-cited cases for the proposition that sanctions are appropriate in a case where the parties differ in their interpretation of terms. In *Kimball Hill*, Judge Barnes determined that a surety company was in civil contempt for violating the terms of a plan of reorganization. *Kimball Hill*, 565 B.R. at 902. Like the instant case, the surety company in *Kimball Hill* interpreted the terms of the plan differently than the party seeking contempt. *Id.* That alone did not save the surety company, as the *Kimball Hill* court held that the claims asserted by the surety company were released and enjoined under the plan and confirmation order, and in bringing further suit, the surety company had violated the plan injunction and found itself in civil contempt. *Id.* at 905.

In *PCNet*, the Connecticut court held a defendant in contempt for violating the terms of a court order embodying a settlement agreement between the parties. *PCNet, Inc. v. Advanced Corp. Networking*, CV 910120403, 1997 Conn. Super. LEXIS 2198, at *7 (Super. Ct. Aug. 13, 1997). Like the instant case and *Kimball Hill*, the issue was one of interpretation: defendant in *PCNet* argued that the order and settlement agreement did not bar it from selling certain products to a third party. *Id.* at *1. The *PCNet Court* considered the document as a whole, ultimately determining that when read in context, the agreement only made sense if such a prohibition existed. *Id.* at *7.

However, SunTrust had a different, plausible interpretation of the Chapter 11 Plan and Confirmation Order. While its view has been rejected, it should now be given a clear order to

8

issue a release of its second mortgage. Civil contempt will be an appropriate remedy for Debtor if SunTrust violates such a clear court order. Therefore, a civil contempt hearing will follow if SunTrust fails to obey the court order and refuses to release its second mortgage.

## CONCLUSION

For the foregoing reasons, Debtor's Motion for Rule to Show Cause will be granted in part and denied in part at this time.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of August 2019

Case No. 12 B 48247
In re: Jesus Enrique Batista-Sanchez
Last Updated: 8/14/2019

## CERTIFICATE OF SERVICE

I, Amartya Bagchi, certify that on August 14, 2019, I caused to be served copies of the foregoing document to the following by either U.S. Mail or electronic mail to those who have consented to such service.

_Amartya Bagchi_
Law Clerk

## SERVICE LIST

### Electronic Service through CM/ECF System

Counsel for Debtor
Jesus E Batista, The Batista Law Group, PSC, 420 Ponce De Leon Ave. Ste. 901, San Juan, PR 00918

William J Factor, Ariana Holtschlag, Sara E Lorber, The Law Office of William J. Factor, 105 W. Madison St., Suite 1500

Counsel for Keen's Pointe Community Association, Inc.
Carlos R Arias, Clayton & McCulloh, 1065 Maitland Center Commons Blvd, Maitland, FL 32751

Gregory K Stern, Gregorty K. Stern, P.C., 53 West Jackson Blvd., Suite 1442, Chicago, IL 60604

Counsel for SunTrust Bank, Inc & SunTrust Mortgage, Inc.
Peter C Bastianen, Jose Moreno, Codilis and Associates, 15W030 N. Frontage Rd., Suite 100, Burr Ridge, IL 60527

Cari Kauffman, Sorman & Frankel, Ltd., 180 North LaSalle Street, Suite 2700, Chicago, IL 60601

Toni Townsend, Dana N O'Brien, McCalla Raymer Leibert Pierce, LLC, One North Dearborn, Suite 1300, Chicago, IL 60602

Andrew J Nelson, Pierce & Associates, 1 North Dearborn St., Suite 1300, Chicago, IL 60602

Counsel for Bank of New York Mellon FKA The Bank of New York, As Trustee (CWMBS 2004-12 MSTR)

Ross T Brand, Kluever & Platt, LLC, 65 E. Wacker Place, Suite 2300, Chicago, IL 60601

<u>Counsel for The Bank of New York Mellon Trust Company, N.A. as Trustee for GMACM Home Loan Trust 2006-HLTV1</u>

Kathryn A Klein, Riezman Berger PC, 7700 Bonhomme, 7th Floor, St Louis, MO 63105